# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DIANE HARPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0577-WS-M |
| | ) |
| O'CHARLEY'S, LLC, | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEEL-SCHAFFER, INC., | ) |
| | ) |
| Third-Party Defendant, | ) |

## ORDER

This matter comes before the Court on the Motion to Dismiss (doc. 26) filed by third-party defendant, Neel-Schaffer, Inc. The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

This action arises from an incident that occurred on January 29, 2015 in the parking lot of the O'Charley's restaurant on Airport Boulevard in Mobile, Alabama. After dining at the restaurant, plaintiff, Diane Harper, was walking outside and stepped from the sidewalk onto the curb ramp adjacent to her car, which was parked in an accessible parking space. As she did so, Harper fell to the ground and incurred certain personal injuries. In her Complaint, Harper attributes her fall and associated injuries to "the abrupt change in level between the sidewalk and the side of the ramp, as well as the excessive narrowness of the ramp itself and the location of the ramp in the access aisle adjacent to the accessible parking space." (Doc. 1, ¶ 5.) Based on these allegations, Harper's Complaint asserts claims against defendant, O'Charley's, LLC, for violation of the public accommodation provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and for negligence / negligence *per se*, all based on alleged

defects in the design, construction, and/or maintenance of the curb ramp in the parking lot of the O'Charley's restaurant where the fall took place. Among other things, Harper maintains that the ramp was too steep and too narrow, that the change in level from sidewalk to ramp was too abrupt, and that the access aisle to the accessible parking space was inadequate.

On September 20, 2017, O'Charley's, with prior leave of court, filed its Third-Party Complaint (doc. 18) against Neel-Schaffer. In this pleading, O'Charley's alleges that it had contracted with Neel-Schaffer in April 1996 for the latter "to perform certain engineering and design services for a site development plan for the demolition, reconstruction and renovation of" the restaurant where Harper was injured. (Doc. 18, ¶ 5.) O'Charley's further alleges that Neel-Schaffer's site development plan for that location was deficient because it "did not contain any detail, instructions or design for the access ramps to the O'Charley's parking lot," and that "there has been no additional work, repair or material alteration to the access ramps, sidewalks or parking lot … since the time they were constructed in 1996 … pursuant to the plans provided by Neel-Schaffer." (*Id.*, ¶¶ 7-8.) In light of these allegations, the Third-Party Complaint delineates third-party claims against Neel-Schaffer for both contractual indemnification (predicated on a written agreement in which Neel-Schaffer promised to indemnify O'Charley's) and common-law indemnification.

Several provisions of the April 1996 agreement between O'Charley's and Neel-Schaffer are of particular relevance to the pending Motion to Dismiss.[1] The key portion of the indemnity

---

[1] The terms of that agreement are not recited in the Third-Party Complaint. Ordinarily, litigants may not rely on facts outside the pleadings for purposes of a Rule 12(b)(6) motion. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "limit[] our review to the four corners of the complaint"); *Hayes v. U.S. Bank Nat'l Ass'n*, 648 Fed.Appx. 883, 887 (11th Cir. Apr. 21, 2016) ("In evaluating whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim, a court is generally limited to reviewing what is within the four corners of the complaint.") (citations and internal marks omitted). However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," in the sense that "the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal"). In light of the contractual indemnity claim asserted by O'Charley's, it cannot reasonably be disputed that the contract
(Continued)

clause reads as follows: "[Neel-Schaffer] shall indemnify and hold harmless [O'Charley's] from [O'Charley's] loss or expense, including reasonable attorney's fees for claims for personal injury (including death) or property damage arising out of the sole negligent act, error or omission of [Neel-Schaffer]." (Doc. 27, Exh. 1 at Exh. A, ¶ 14.) The April 1996 contract also included a "governing law" provision stating as follows: "This Agreement shall be governed by and construed in accordance with the laws of the principal place of business of [Neel-Schaffer]." (*Id.*, ¶ 27.) For purposes of this Motion, the parties agree that Neel-Schaffer's principal place of business is (and at all relevant times was) located in Mississippi.

## II. Analysis.

Neel-Schaffer's Motion to Dismiss is grounded in what appears at first blush to be a straightforward limitations argument.[2] By the unambiguous terms of the Third-Party Complaint, O'Charley's is suing Neel-Schaffer for indemnity based on engineering and design services that Neel-Schaffer performed in 1996, when Neel-Schaffer prepared a site development plan for renovation of the premises where Harper fell in 2015. The Third-Party Complaint alleges that Neel-Schaffer's site development plan lacked detail, instructions or design for the access ramps that Harper identifies as the cause of her injuries, and says that no work has been done on the parking lot, sidewalks or access ramps since 1996 or shortly thereafter. Thus, by the clear terms

---

between those entities is central to O'Charley's claims; moreover, O'Charley's has not questioned the authenticity of the contract attached as Exhibit 1 to Neel-Schaffer's principal brief on the Rule 12(b)(6) Motion. For these reasons, the Court deems it proper to consider the written contract in adjudicating Neel-Schaffer's Rule 12(b)(6) motion, and does so without converting the motion into a summary judgment motion.

[2] Of course, there are significant constraints on a defendant's ability to litigate a limitations defense at the pleadings stage. *See, e.g., La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense and plaintiffs are not required to negate an affirmative defense in their complaint.") (citation and internal marks omitted). But a limitations defense may properly be pursued via Rule 12(b) motion if the face of the complaint reveals an obvious timeliness defect. *See, e.g., Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 872 (11th Cir. 2017) ("a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.") (citation omitted). Here, Neel-Schaffer's Motion to Dismiss proceeds on the theory that the limitations problem is apparent on the face of the Third-Party Complaint; therefore, the argument is properly raised at this time.

of the Third-Party Complaint, O'Charley's seeks recovery from Neel-Schaffer in indemnity for alleged deficiencies in services provided by Neel-Schaffer more than 18 years prior to Harper's injuries for which O'Charley's now seeks indemnification.

According to Neel-Schaffer, these clear factual allegations in the Third-Party Complaint require dismissal of O'Charley's claims against it on timeliness grounds. In that regard, Neel-Schaffer points to Alabama's construction statute of repose. That statute generally provides for a two-year limitations period from the time a cause of action accrues "against any architect or engineer performing or furnishing the design, planning, specifications, testing, supervision, administration or observation of any construction of any improvement on or to real property … for the recovery of damages for" injury to a person caused by any deficiency in such design, planning, specifications, and so on. Ala. Code § 6-5-221(a). More importantly for our purposes, the statute goes on to state that

> "Notwithstanding the foregoing, no relief can be granted on any cause of action which accrues or would have accrued more than seven years after the substantial completion of construction of the improvement on or to the real property, and ***any right of action which accrues or would have accrued more than seven years thereafter is barred***, except where prior to the expiration of such seven-year period, the architect, engineer, or builder had actual knowledge that such defect or deficiency exists and failed to disclose such defect or deficiency to the person with whom the architect, engineer, or builder contracted to perform such service."

Ala. Code § 6-5-221(a) (emphasis added).

Neel-Schaffer's argument presented in its Motion to Dismiss is simple. Alabama has a seven-year statute of repose for engineering services relating to the design, planning or specification of construction of improvements on real property. O'Charley's has filed a Third-Party Complaint bringing causes of action against Neel-Schaffer for alleged deficiencies in its engineering services relating to the design of improvements on O'Charley's property that were performed in 1996, more than 18 years prior to the accrual of O'Charley's claims against Neel-Schaffer at the time of Harper's fall in January 2015. Therefore, Neel-Schaffer posits, the Third-Party Complaint is time-barred on its face pursuant to the seven-year statute of repose set forth at § 6-5-221(a), and must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In response to this straightforward argument, O'Charley's offers an equally straightforward counterargument. Specifically, O'Charley's insists that § 6-5-221(a) does not apply because its contractual indemnity claim against Neel-Schaffer is governed by Mississippi

law, not by Alabama law.³ O'Charley's argument relies on Paragraph 27 of the April 1996 contract. That provision is a "governing law" clause specifying that "[t]his Agreement shall be governed by and construed in accordance with the laws of the principal place of business of the Engineer," which everyone agrees is Mississippi. On that basis, O'Charley's insists that Mississippi law, not Alabama law, governs its contractual indemnification claim predicated on the April 1996 Agreement. Thus, O'Charley's position is that the relevant limitations period governing its contractual indemnification claim is supplied not by Alabama Code § 6-5-221(a), but by Mississippi Code § 15-1-41. The Mississippi provision states, in relevant part, as follows:

> "No action may be brought … for an injury to the person, arising out of any deficiency in the design, planning, … or construction of an improvement to real property, and *no action may be brought for contribution or indemnity* for damages sustained on account of such injury *except by prior written agreement providing for such contribution or indemnity*, against any person, firm or corporation performing or furnishing the design, planning, … or construction of such improvement to real property *more than six (6) years after the written acceptance or actual occupancy or use*, whichever occurs first, of such improvement …."

Miss. Code § 15-1-41 (emphasis added). By the plain meaning of that statute, O'Charley's maintains, Mississippi law creates a six-year construction statute of repose for contribution or indemnity claims, but exempts from that restriction cases in which there is a "prior written agreement providing for such contribution or indemnity." Because such a "prior written agreement" exists as between it and Neel-Schaffer (in the form of the April 1996 contract), O'Charley's reasons that the six-year statute of repose is inapplicable and that its contractual indemnification claim is therefore timely under governing Mississippi law.

Movant fires back with a series of counterarguments that vastly complicate the straightforward discourse presented in the parties' principal memoranda.⁴ As an initial matter,

---

³ Notably, O'Charley's Response remains silent as to the timeliness of its common-law indemnity claim. There appears to be no dispute that the common-law claim is indeed governed by Alabama law, in which case it is plainly time-barred under any reasonable application of the § 6-5-221(a) statute of repose. O'Charley's advances no argument otherwise.

⁴ Unfortunately, these counterarguments are nowhere to be found in Neel-Schaffer's principal brief. Even though the question of whether Mississippi's or Alabama's construction statute of repose applies is the obvious focal point of dispute here, Neel-Schaffer elected to address it only via footnote in its principal brief, and there in only the most skeletal of terms. (Doc. 27, at 4 n.2.) Then, after O'Charley's predictably made the Mississippi statute the
(Continued)

Neel-Schaffer insists that Paragraph 27 of the April 1996 contract does not reach O'Charley's contractual indemnity claim because Paragraph 27 does not specify that Mississippi law governs any <u>claims</u> arising out of that agreement, but instead says only that Mississippi law governs the agreement itself. (*See* doc. 34, at 5.) This distinction is not persuasive.[5] To be sure, case law is legion for the proposition that a choice of law clause stating only that the agreement is governed by a particular state's laws – as contrasted with one providing that all claims and disputes arising under the agreement are governed by that state's laws – does not reach tort claims. *See, e.g., Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) ("In determining whether a choice of law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision. … A choice of law provision that relates only to the agreement will not encompass related tort claims.") (citations omitted); *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292 (11th Cir. 2003) (citing authorities for proposition that choice of law clause specifying that contract was governed by law of a particular state was not broad enough to control claims arising in tort). But O'Charley's has brought a <u>contractual</u> indemnity claim against Neel-Schaffer. As a matter of logic and common sense, the breadth and scope of Neel-Schaffer's contractual duty to indemnify O'Charley's pursuant to Paragraph 14 (including any temporal restrictions on that duty) fall squarely within the parameters of the choice of law provision found at Paragraph 27. Stated differently, Neel-Schaffer made a promise in Paragraph 14 to indemnify O'Charley's from loss

---

centerpiece of its Response (doc. 32) in opposition to the Motion to Dismiss, Neel-Schaffer devoted its entire Reply (doc. 34) to reeling off one superficial, underdeveloped counterargument after another, all when it was too late for O'Charley's to be heard in response and with the effect of shifting the burden to the Court to sift through myriad fragmentary and sometimes misleading statements of law set forth in the Reply. The analysis herein is colored in part by the disfavored nature of movant's briefing approach.

[5] Of course, "[w]here there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." *Once Upon a Time, LLC v. Chappelle Properties, LLC*, 209 So.3d 1094, 1097 (Ala. 2016) (citation omitted). "General contract law requires a court to enforce an unambiguous, lawful contract, as it is written. … A court may not make a new contract for the parties or rewrite their contract under the guise of construing it." *Public Bldg. Authority of City of Huntsville v. St. Paul Fire and Marine Ins. Co.*, 80 So.3d 171, 180 (Ala. 2010) (citations omitted). This discussion proceeds in recognition of these fundamental principles.

or expense for personal injury arising out of Neel-Schaffer's negligent acts, errors or omissions. By a plain reading of Paragraph 27, that promise to indemnify (which O'Charley's is seeking to enforce here) is governed by Mississippi law; thus, claims based on breach of that promise are properly controlled by Mississippi law, as well.[6]

Next, Neel-Schaffer objects that O'Charley's reliance on the choice of law provision found in Paragraph 27 "completely disregards Alabama's established conflict-of-laws procedure." (Doc. 34, at 2.) There is a good reason for that. Where an enforceable contractual choice of law provision exists, courts typically do not analyze the forum state's conflict-of-laws rules. *See, e.g., Green Leaf*, 341 F.3d at 1301 ("Because the choice-of-law provision is narrow [and inapplicable] …, we turn to the choice-of-law rules of the forum state, Florida, to determine the applicable law governing the Plaintiffs' tort claims."); *Stovall v. Universal Const. Co.*, 893 So.2d 1090, 1102 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern."); *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 507 (Ala. 1991) ("parties normally are allowed to choose another state's laws to govern an agreement"); *DJR Associates, LLC v. Hammonds*, 241 F. Supp.3d 1208, 1220 (N.D. Ala. 2017) ("Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an

---

[6] Neel-Schaffer's argument places more weight on *Cooper* and *Green Leaf* than they can bear. Nowhere in those decisions – or any other cases cited by Neel-Schaffer – does the Eleventh Circuit deem a choice of law provision relating only to the agreement as failing to reach contract-based claims arising from that agreement. Such an interpretation would essentially read the choice of law provision out of existence. Not surprisingly, Neel-Schaffer fails to identify a single case in which any court has declared that a choice of law provision stating that a contract will be governed by the law of a particular state is inapplicable to contract-based claims under that agreement unless the choice of law clause employs talismanic language about "claims arising out of the agreement." There is case law to the contrary. *See, e.g., American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.*, 756 F.3d 314, 319 (4th Cir. 2014) ("The plain language of the contract before us unambiguously provides that the contract shall be 'governed by' New York law. This phrase clearly signals the parties' intent that … New York law will be applied as 'governing' the timeliness of claims asserted under the contract. Because the claims at issue in this case are contractual in nature …, the parties' choice-of-law clause amply encompasses the present claims."); *Huntsville Golf Development, Inc. v. Estate of Brindley*, 2015 WL 5693608, *6 (N.D. Ala. Sept. 29, 2015) (where choice of law provision states that "[a]greement shall be governed by … the laws of the State of Tennessee," that provision "governs only HGD's contract-based claims against the Brindley Estate").

agreement. … If the parties have not selected a particular state's law, the law of the state where contract was made applies.") (citation omitted); *SE Property Holdings, LLC v. Sandy Creek II, LLC*, 954 F. Supp.2d 1322, 1335 (S.D. Ala. 2013) ("[I]n Alabama, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement."). Because Alabama law generally requires courts to look to the subject contract and to honor the parties' expressed intentions as to which state's law controls, the Court rejects Neel-Schaffer's unsupported assertion that Alabama's conflict-of-law principles automatically trump Paragraph 27.[7]

---

[7] In its reply brief, Neel-Schaffer argues for the first time that under Alabama's general conflict-of-law rules, statutes of limitations are viewed as procedural rather than substantive, such that Alabama law forbids application of the Mississippi limitations period here. (Doc. 34, at 3.) This argument could and should have been raised in movant's principal brief and is therefore inappropriate for a reply. *See, e.g., SE Property Holdings, LLC v. Saint Family Limited Partnership*, 2017 WL 1628898, *7 n.14 (S.D. Ala. May 1, 2017) ("As a threshold matter, this argument is improper because defendants raised it for the first time in a reply."); *Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332 (S.D. Ala. 2011) ("New arguments presented in reply briefs are generally not considered by federal courts.") (citations omitted). At any rate, it appears that, as a broad proposition, Neel-Schaffer is correct that Alabama courts typically deem statutes of limitation to be procedural rather than substantive. *See Precision Gear Co. v. Continental Motors, Inc.*, 135 So.3d 953, 957 (Ala. 2013) ("As to matters of procedure, however, Alabama applies its own procedural law …. This court has also held that, in most instances, statutes of limitations are procedural matters."). However, Neel-Schaffer does not cite a single authority applying Alabama law to hold that an agreed-upon contractual choice-of-law provision is ineffectual as to limitations periods governing contract-based claims. There is federal appellate authority to the contrary. *See American Steamship*, 756 F.3d at 319 (even assuming statute of limitations is "procedural" rule, where plain language of contract says that contract is governed by New York law, "New York law will be applied as governing the timeliness of claims asserted under the contract"). And again, as noted *supra*, "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *DJR Associates*, 241 F. Supp.3d at 1220. Neel-Schaffer neither (i) identifies case law declaring that such a right does not extend to applicable statutes of repose for contractual claims, nor (ii) addresses the effect of a valid choice of law clause on its argument. Under these circumstances, and in light of Neel-Schaffer's failure to raise the procedural/substantive distinction relating to statutes of limitation until its reply brief, in contravention of the general rule forbidding litigants from raising new arguments in replies, the Court will not perform the parties' research for them and definitively resolve the issue at this time. Instead, this ground for the Motion to Dismiss is rejected as having not been legally supported by the movant, subject to the caveat that Neel-Schaffer may renew this ground for relief in a properly supported motion for summary judgment at an appropriate time.

Alternatively, Neel-Schaffer contends that even if the Mississippi statute of limitations applies, its Motion to Dismiss should nonetheless be granted. Recall that the plain language of the Mississippi provision states that "no action may be brought for contribution or indemnity for" personal injuries arising out of deficient design of improvements to real property "except by prior written agreement providing for such contribution or indemnity against any person, firm or corporation performing or furnishing the design … of such improvement to real property more than six (6) years after" the work is completed. Miss. Code § 15-1-41. O'Charley's plain reading of § 15-1-41 is that Mississippi has a six-year statute of repose for actions arising from construction deficiencies, with an exception allowing contribution and indemnity claims to be brought outside this repose period where there is a "prior written agreement providing for such contribution or indemnity."

Neel-Schaffer does not dispute that the ordinary meaning of the text of § 15-1-41 supports O'Charley's interpretation; nonetheless, Neel-Schaffer posits that such a reading "would lead to an absurd result" under which "the indemnitor is obligated forever – to the point of death, or even beyond." (Doc. 34, at 6.) Instead of this "absurd" outcome, Neel-Schaffer proposes that § 15-1-41 be construed as meaning that "parties, for extra consideration or value, [may] extend periods of indemnification … past six (6) years by including clear, precise, exact language in the parties' agreement." (*Id.*) This contention is not persuasive for at least three distinct reasons. First, basic principles of statutory construction counsel that courts must look to the plain language of a statute to determine its meaning and must not rewrite or supplement that language. *See generally Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 228, 128 S.Ct. 831 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."); *Cockrell v. Pruitt*, 214 So.3d 324, 331 (Ala. 2016) ("In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.") (citations omitted); *Sears v. Hampton*, 143 So.3d 151, 154 (Ala. 2013) ("The function of this Court is to say what the law is, not to say what it should be.") (citations and internal quotation marks omitted). Accordingly, the Court cannot and will not judicially modify § 15-1-41 by reading nonexistent language into the statute to mandate a six-year statute of repose unless the parties' agreement includes "clear, precise, exact language" extending it "for a specific time period," as Neel-Schaffer advocates. Second, Neel-Schaffer fails to identify any authority that has interpreted § 15-1-41 in the manner it proposes. Third, Neel-Schaffer's suggestion that the

plain language leads to an "absurd result" does not resonate. Section 15-1-41 is a statute of repose, not a statute of limitations. No principle of law or equity says states must have statutes of repose at all for construction design work, much less that it would be unfair, unjust or "absurd" for a legislature to create exceptions to the construction statute of repose where the parties have voluntarily agreed to a contractual indemnity arrangement.

Finally, Neel-Schaffer takes the position that applying § 15-1-41 to this dispute is prohibited by Alabama public policy. It is true, of course, that Alabama courts have declined to enforce choice of law provisions where application of the designated forum's law will bring about a result that is contrary to Alabama public policy.[8] In so concluding, Alabama courts have expressly looked to the *Restatement (Second) of Conflict of Laws* §§ 187 and 188 for guidance. *See Cherry, Bekaert*, 582 So.2d at 506-07. According to Section 187(2)(b) of the *Restatement*, a choice of law provision will not be honored where "application of the law of the chosen state would be contrary to a fundamental policy of" the forum state. The Alabama Supreme Court has indicated that "in order for a policy to be considered fundamental it must be a substantial one and may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." *Cherry, Bekaert*, 582 So.2d at 507 (citation and internal quotation marks omitted). In Alabama, this line of reasoning is often invoked in the context of covenants not to compete, which have repeatedly been held to fly in the face of Alabama public policy. By contrast, Neel-Schaffer has not shown that it would violate a fundamental policy of the State of Alabama for an engineer to be held to its promise to indemnify a real property owner for injuries caused by the engineer's errors in a site development plan, where the parties agreed their contract was to be governed by Mississippi law. The mere fact that Alabama has structured its construction statute of repose differently than

---

[8] *See, e.g., Buckley v. Seymour*, 679 So.2d 220, 226 (Ala. 1996) ("the right of parties to a contract to choose the law governing their obligations is recognized by Alabama law only if the consequences of that election are not contrary to Alabama public policy"); *Cherry, Bekaert*, 582 So.2d at 507 ("While parties normally are allowed to choose another state's laws to govern an agreement, where application of that other state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern the agreement."); *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp.2d 1189, 1196-97 (N.D. Ala. 2009) ("In Alabama, the right of parties to an agreement to choose a particular state's laws to govern an agreement is well-settled, so long as choice-of-law provisions are not contrary to Alabama law or public policy.") (citations and internal quotation marks omitted).

Mississippi does not necessarily prompt a conclusion (suggested by Neel-Schaffer) that any divergence from the Alabama statute necessarily violates a fundamental policy of Alabama. Such a contract is neither illegal nor the product of oppressive use of bargaining power; to the contrary, it was Neel-Schaffer's own preprinted form contract that O'Charley's seeks to enforce here. Once again, Neel-Schaffer identifies no decisional authority to support its position that Alabama has a fundamental public policy against enforcing agreed-upon contractual indemnity provisions more than seven years after a construction project is completed.[9]

## III. Conclusion.

For all of the foregoing reasons, Neel-Schaffer's Motion to Dismiss (doc. 26) is **granted in part** and **denied in part**. The common-law indemnity cause of action set forth in the Third-Party Complaint is **dismissed** as time-barred pursuant to Alabama's construction statute of repose. In all other respects, the Motion to Dismiss is **denied**. Neel-Schaffer is **ordered** to file an answer to the Third-Party Complaint by no later than **December 4, 2017**.

DONE and ORDERED this 20th day of November, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9] At best, Neel-Schaffer points to Alabama statutory language announcing a "state objective of removing responsibility from, and preventing suit against these regulated professions … which are least likely to be responsible or at fault for defects and deficiencies which cause injury long after their services or work is completed." Ala. Code § 6-5-225(e). The quoted language reflects that the Alabama legislature indeed had a policy justification for enacting the seven-year construction statute of repose. Legislatures typically do have policy reasons for the laws they enact. However, to acknowledge that fact is not tantamount to saying that it would violate a fundamental public policy of Alabama for private parties to contract around the seven-year statute of repose (*i.e.*, for an engineer to waive the protections of that statute and promise contractual indemnification of the premises owner), which is essentially what Neel-Schaffer did here by (i) promising to indemnify O'Charley's for losses for personal injury claims arising out of Neel-Schaffer's negligence in preparing the site development plan, and (ii) fixing Mississippi law as controlling that agreement. Movant has not shown that contract to be unenforceable as a matter of fundamental Alabama public policy; therefore, the narrow exception discussed in *Cherry, Bekaert* to the general law of honoring parties' choice-of-law provisions has not been shown to be applicable here.